I represent Gene Paul Mboussi-Ona, who refers to himself as Mr. Mboussi in this matter. Mr. Mboussi is here to ask this court for relief in two forms. First, he asks this court to determine the threshold issue of whether he stands convicted and therefore inadmissible to this country. The second issue, if the first issue is not found in his favor, is still not fatal to his claim because his due process rights were also violated. With regards to the first issue of whether or not he stands convicted, this circuit has two different opinions that are both still considered good law that come out different on the issue. The government cites Ramirez-Castro as holding that convictions that have been expunged have no effect in federal law. Whereas the Lujan-Armendaria case, which dealt with the First Offender Act, the court specifically said that the government's intent in determining conviction would not change the BIA's 50-year history of holding the opposite. Mboussi believes that the Lujan interpretation of the term conviction has more merit in that in determining what conviction meant, Congress was trying to resolve the issue of different state regimes referring to vacatur decisions and deferred adjudication decisions. Courts were always battling on whether law of one state, which could result in a different determination, would make an alien deportable under one state and the same type of rehabilitation statute would make him not deportable under another state's regime. Here, there's also, even if we rely on the Ramirez-Castro holding that was offered by the respondent, the Ramirez case says that there are still yet to be unrealized exceptions to the new rule cited in Ramirez. We believe this case would represent one of those new exemptions. All the cases that have dealt with this matter revolved around situations where the crime was not expunged at the time the government began deportation proceedings. Here, Mboussi was convicted in 1997, his crimes were expunged in the year 2000, and the immigration proceedings did not begin until 2001. Even then, they weren't served on him until 2005. The second issue before this court is whether or not Mr. Mboussi's due process rights were violated. A review of the record shows that Mr. Mboussi did not receive adequate assistance from the IJ as a pro se litigant to bring his claims. In particular, I'd like to focus on the IJ's instructions with regards to what constitutes an extreme hardship. This court has already determined that extreme hardship is not the kind of, it's not a bright line test or a bright line rule that allows somebody to know whether they either suffer an extreme hardship or they don't suffer an extreme hardship. The court has outlined nine factors. For the IJ to properly assist Mr. Mboussi in this regard, he would be required, or at least in my mind, be required to lay out these factors. What the immigration judge did was tell Mr. Mboussi what extreme hardship was not. He told him specifically that an extreme hardship is not an ordinary hardship. It's something more. Well, for an untrained person to try to know what type of evidence to present, he needs to know what things should be considered. Well, let me, I read the transcript where the IJ is questioning Mr. Mboussi, and it's pretty clear that the only qualifying person for whom the hardship would be counted is his wife. That's correct. That is to say, there are his own children who are apparently being cared for by his wife, but they're not citizen children, so the only person is the wife. That's correct. And the IJ goes through and says, okay, well, what's the hardship on your wife? And Mr. Mboussi answers, I'm assuming honestly, as best he can, what the hardship is for her. I don't see that the IJ has abused his discretion and sort of cut off any, I mean, he's asking the questions that are designed to bring out precisely what the standard is. I also think that with respect to hardship, we've seen a lot of these hardship cases with respect to, under the new standard, with respect to family members or citizenship and so on. And as you know, they're unreviewable in this court. Once the IJ makes the decision, we can't do anything about it. Because of the posture of this case, that doesn't quite matter. We're just trying to assess what reasonable likelihood might there be that the IJ could have been persuaded, not how we would review it. But I have to say that I've read an awful lot of these IJ cases on what constitutes sufficient hardship, and this one's not even close. Your Honor, it's not close because the IJ didn't help him to know what type of evidence he should bring. But in the earlier hearing before the evidence was taken, he should have provided Mbassi with a guide or something that tells him what factors. You presumably know your client's story. Let's go outside the record. Is there something out there? I mean, let's judge what you said. We see these a lot. It takes a lot to go outside the realm of ordinary hardship to reach the extreme extraordinary level. So what story would he have to tell if he had been given a chance? Well, the story would be more of the same on the one hand. And on the other, it would also allow him to present evidence of his role in the community, which is one of the enumerated factors. He serves as a pastor of a church. He has good standing in the community. We've got a statute to deal with. Who's the qualifying relative who suffers because he's a pastor of a church? His spouse, his citizen spouse. You know, I think apparently what we have on the record, he's a citizen, he's a pastor of a church, and he has some, to use an old-fashioned word, meretricious relationship with someone in that congregation. Well, his testimony is not that he has an extramarital relationship with Lysette Washington. His testimony is that somehow they've exchanged rings and he's told her to go away. You're unrespectful. I think that I agree with that. He did say that he accepted the gift of a ring, but he did not say that he wore the ring. The IJ mistakenly says that, oh, you've admitted that you wear a ring. And I think that is clear if you look at some of the other evidence. Do you have other due process matters? Because it seems to me that the likelihood of ever showing that the extreme extraordinary hardship on her is very, very doubtful. Well, there are. He was not allowed to present evidence regarding his convictions. If we go to page, I believe it's 89 and 90 of the record, there's a discussion with counsel for the respondent regarding whether or not the two convictions. He decides that he's inadmissible without obtaining any testimony from our client. Our client, recognizing that something was afoul, actually questioned the IJ judge and said, well, wait, I'd like to talk about the convictions. The convictions, there's some evidence in the record that these convictions may have been expunged for legal reasons, which the state or, I'm sorry, which the government acknowledges would fall outside of the Ramirez holding and would be expunged for all purposes. Well, on page 90, the IJ says, now, did you have something you wanted to bring to my attention? So presumably, if he had something, isn't that an opportunity to offer it up? He did start to bring to their attention. He did bring things to their attention. He had his degree or something showing he'd graduated from the seminary and so forth. Where is he told, no, I'm not going to look at that piece of paper? Is there any time that he offers something the judge says he won't look at? Well, I think that that's the issue, Your Honor, in that he didn't have a proper understanding, and it strengthens his argument that, as a pro se litigant, that he needed additional assistance in order to be able to bring his claim. Now, he didn't need the IJ to serve as his attorney. But we keep asking you, okay, now he does have counsel, you, what is it that he's going to present that's going to make this into a different case? His testimony that's in the record, rather than testimony that we need to go outside and find, is that his crimes were not, that he believes that they were expunged because the items that were alleged to have been stolen were found. If they are indeed expunged for that reason, then he would not be inadmissible. And have you done any exploration as to whether or not that's true? We have not used our efforts to go outside of the record at this time, Your Honor. That strikes me as highly implausible as a basis for expunging a conviction in California. I won't say it's impossible, but it strikes me as highly implausible. I appreciate that, Your Honor. Why don't we hear from the government, and then you'll have a minute. Thank you, sir. You take your facts as the hand is dealt. Good morning, Your Honor. Terry Skadron for the respondent. This case involves an alien who pleaded guilty to two felony grand theft offenses under California law, only three years after he was admitted on a nonimmigrant visa. We know that these convictions were entered, and we know the basis for the expungement. It was under California Penal Code 1203.4, and under this court's decision in Ramiro Castro, that expungement had no effect on the validity of the convictions for immigration purposes. Can you translate 1203.4 for us? 1203 is an expungement provision under California law. I don't have the title to the provision. It's cited in our briefs. That was the exact same provision that was addressed in Ramiro Castro. But what I'm asking you, what are the bases for it? I mean, is one of the possible bases for expungement under 1203.4, they found the goods and it turns out he's innocent? No, no, Your Honor. And moreover, as the court has recognized in previous cases, it doesn't completely eliminate all consequences of the conviction. The conviction still counts for purposes of California's three strikes law. It can be raised in a later criminal prosecution. The court in the Hayden decision cataloged some of the continuing consequences post expungement under this provision. So we submit that there's really not an issue of removability in this case, and really the only issue that is for the court to seriously consider is the due process question. If the court agrees that this petitioner was convicted of crimes involving- Before you leave the expungement, is the definition of conviction still the one that's in the 1996 statute that's being interpreted? Is the conviction that we're talking about? Yeah. I'm sorry. What constitutes a conviction is the key question, and whether expungement does anything about the conviction. And so I read that statute, it doesn't. No, Your Honor, I don't believe it does. That's still the same one? I've been looking at the earlier case, the one that seemed to be Morello-Espinosa, made that really clear, quoting that statute, that if the judge has ordered some form of punishment, it's still a conviction from the standpoint- We would rest on those two cases, Morello and Ramirez-Castro. So if the petitioner was convicted of and properly found removable based on the crimes involving moral turpitude, his only avenue to relief would be adjustment of status, and for adjustment he would have to qualify for a waiver under 212H, and to get that waiver he would have to show extreme hardship to a qualifying relative, namely his wife, and for the reasons that I think the court may, based on questioning heretofore, this petitioner lost on his hardship claim. We submit not because his hearing was fundamentally unfair, but because he didn't have sufficient evidence, he didn't have the facts to show extreme hardship to his wife. His hardship claim was solely that his wife would suffer emotional harm from the separation from him and possibly his children if they accompanied him to Cameroon, and that if he was removed on his own, he would no longer be able to serve as an interpreter between his wife and his children. This would, while the hardship question is not directly before the court, there's no prejudice here no matter what happened in terms of the instruction because it doesn't come close to showing hardship under the INA. The questions with regard to whether the judge's instructions on what constitutes hardship, whether those were sufficient, we submit that they were. The judge gave the floor, said it has to be more than an ordinary hardship. For the judge to go beyond that and give specific examples, had he done so we may be facing a very different type of claim if the hardship claim were not subsumed in those examples. Those examples might be interpreted by a pro se litigant to be exclusive. So what I think the judge did here was the safe course and tell him it has to be more than ordinary hardship. Then in the course of the hearing the judge asked open-ended questions, never cut off his responses, gave him a full opportunity to present whatever hardship evidence he had, and at the end of the day there wasn't a hardship claim. And before this court today he hasn't suggested that he had additional hardship evidence. Moreover, contrary to his claim, the judge did assist him in developing the record as required by the court's Jacinto decision. We would distinguish that decision on many different levels, but probably most fundamentally there's no question he understood the nature of the proceedings. His answers were responsive to the questions asked of him, unlike Jacinto who when questioned about the... His answers were responsive until he gets asked about his crimes and then they just dissolve into gibberish. I would agree with that, but on the question of his crimes, the most probative evidence was the conviction documents. And the most exculpatory thing in the record was that those convictions were expunged under that California statute, and that wasn't going to help him. This appears to us to be a fairly clear-cut case, and if the court has no further questions... I think not. We'll rest on our brief. Thank you. Thank you very much. A minute in response. Just as a matter of clarification, 1203.4, the California Penal Code, expunges for all purposes except for a portion of the motor vehicle code. But I just reread it as your adversary was arguing. There seems to be no basis in 1203.4 for expungement based on innocence. That's what I'm saying. His understanding here was linked to a denial of a request to reduce the felony to a misdemeanor. So, I mean, if it was innocence... The crimes are, first of all, not that it's dispositive, because it doesn't matter for moral turpitude, but the crimes are incorrectly classified as a felony. California's Wobbler statute for it to be a felony requires imprisonment in the state prison. He never served time in the state prison. It would automatically be a misdemeanor. It's these kinds of inaccurate data within these documents that lead us to believe that he should at least be given an opportunity to make his claim and provide his testimony and evidence. But assuming that they count as convictions, and assuming they are convictions for theft, it doesn't matter that California might classify them as misdemeanors, does it? No, and I mentioned that wasn't dispositive, but just for clarification purposes. But it goes to show that the documents are not accurate, and that he is at least entitled to a fair hearing. And the standard isn't if he can prove to this court whether he was prejudiced. It's that if he can show that there might be prejudice. Thank you very much. Thanks, both sides, for their argument. The case of Bassiona v. Keisler is now submitted for decision.
judges: Hug, Fletcher, Clifton